MILLER (AUSTEN v.). See Case No. 661.

## Case No. 9,560.

### MILLER v. BALTIMORE & O. R. CO.

[1 Cin. Law Bul. 276.]

Circuit Court, S. D. Ohio. 1876.

PRACTICE AT LAW—NONSUIT—DEMURRER TO EVIDENCE — MASTER AND SERVANT — FELLOW SERVANTS—AMOUNT OF RECOVERY.

1. The circuit courts of the United States have no power to grant a peremptory nonsuit against the will of the plaintiff.

2. Upon a demurrer to evidence, every fact which can be reasonably inferred from the evidence is taken as admitted, and a demurrer is allowed in no case where there are facts and circumstances which tend to establish the issues.

3. As a general rule the master is not liable to his servant for injuries accruing to him from the negligence of a fellow servant engaged in a common employment. And all agents and employés who are engaged in the general business of operating a railroad are fellow servants.

4. The master, however, is bound to use ordinary care to employ and retain in his service competent servants.

5. If, therefore, injury should result to a brakeman upon a railroad from the negligence of an incompetent conductor, engineer, or brakeman, in whose employment the railroad did not use ordinary care, it would be liable.

6. In such case the plaintiff would be entitled to compensatory damages only, unless such injury was "the result of willful misconduct, or of that reckless indifference to the rights of the plaintiff which is equivalent to an intentional violation of them."

At law.

C. Atherton and Follett & Cochran, for plaintiff.

C. H. Kibler and Hoadly, Johnson & Colston, for defendant.

SWING, District Judge. The action was originally brought in the court of common pleas of Licking county, Ohio, by the plaintiff, Lewis E. Miller, against the Baltimore & Ohio Railroad Company, to recover damages sustained by him, while acting as brakeman, by being caught between two freight cars, while attempting to couple them, standing on a siding of the defendant's railroad at Thornport, Ohio. The plaintiff alleged that he was the hind brakeman of a train coming north on said railroad on September 2, 1872. That he was the inferior servant of the conductor and engineer of said train, and subject to their orders, and that under their employment the said conductor and engineer were his superior officers. That the forward brakeman on said train was without experience in the duties of his business, and inefficient, and that defendant knew it at and before that time. That the plaintiff was ordered by the conductor of said train to couple said cars, and the engineer detached the engine from his train, and attempted to couple the same to the first car on the siding. That by reason of the inefficiency of the front brakeman that duty devolved upon the fireman. That the plaintiff made the proper signal to the engineer not to come back with the first car against the second. That the plaintiff, in pursuance of his general orders, had procured a crooked link to connect the two freight cars, and went between them to adjust the same preparatory to the coupling of the cars, and that the engineer, not obeying his signal, and having, through the inefficiency of the front brakeman, failed to make the coupling between the locomotive and the front car, again thrust the locomotive against the front car, precipitated that against the second car, while plaintiff was adjusting the crooked link, thereby catching the body of plaintiff between the bumpers of the cars, and very seriously injuring him.

Plaintiff based his right of recovery on two grounds: 1st. That the injury resulted from the carelessness of a superior agent, to whose orders and control he was subject. 2d. Also, that the injury was attributable to the inefficiency of the forward brakeman, and the company was culpable in his selection and retention. On the part of the plaintiff, it was contended that the law of the case should conform to the rule declared in the case of Little Miami R. Co. v. Stevens, 20 Ohio, 415, and followed by a line of decisions in Ohio, declaring the corporation liable to an inferior servant for the carelessness and negligence of a superior servant placed in authority and control over the inferior one. On the part of the defendant, it was argued that the rule in Ohio was anomalous, and contrary to the weight of authority in England, and the most of the states of the Union, and should not be declared to be law by the federal courts.

The case being tried by a jury, and evi-

dence having been given by plaintiff to sustain the issues on his part, the plaintiff rested his case, and the defendant then moved the court to order a non-suit on the ground that the evidence in law was not sufficient to maintain the action.

BY THE COURT. Under the law of Ohio, the court, in a proper case, might either grant a non-suit, or arrest the testimony from the jury and direct a verdict for defendant, and, if we are to be governed by the law of Ohio, we should proceed to the examination of the merits of the motion. It is claimed that section 5 of the act of congress passed June 1, 1872 [17 Stat. 197], which provides "that the practice, pleadings, forms and modes of proceeding in other than equity and admiralty causes in the circuit and district courts, shall conform as near as may be to the practice, pleadings and forms and modes of proceeding existing at the time in like causes in the courts of record of the state, within which such circuit or district courts are held," would require us, in the disposition of this motion, to conform to the state practice. In our administration of the law, since the passage of that act, we have held that its provisions were not applicable to and did not control the judge in his trial of the cause; that in this he was governed by the common law and the decisions of the supreme court of the United States; and in this we are fully sustained by the recent decision of the supreme court of the United States in Nudd v. Burrows [91 U. S.] 426. Such being the rule by which we should be governed, we find it to be a well-settled rule "that the circuit courts of the United States have no power to grant a peremptory nonsuit against the will of the plaintiff." Elmore v. Grymes, 1 Pet. [26 U. S.] 469; De Wolf v. Rabaud, Id. 497; Crane v. Norris, 6 Pet. [31 U. S.] 598; Silsby v. Foote, 14 How. [55 U. S.] 218; Castle v. Bullard, 23 How. [64 U. S.] 172; Boucicault v. Fox [Case No. 1,691]; Schuchardt v. Allens, 1 Wall. [68 U. S.] 359. The motion will therefore be overruled.

After the overruling of the demurrer, counsel for defendant suggested to the court that the same object might be obtained by filing either a motion to arrest the testimony from the jury, or a demurrer to the evidence; but, it being suggested by the court that a motion to arrest the testimony from the jury was substantially a motion for nonsuit, the defendant thereupon demurred to the evidence.

BY THE COURT. In the case of Young v. Black, 7 Cranch [11 U. S.] 565, Justice Story says: "A demurrer to evidence is an unusual proceeding, and is allowed or denied by the court, in the exercise of a sound discretion, under all the circumstances of the case." And again the same learned justice, in the case of Towle v. Common Council of

Alexandria, 11 Wheat. [24 U. S.] 320, says: "It is no part of the object of such proceeding (demurrer) to bring before the court an investigation of the facts in dispute, or to weigh the force of testimony, or the presumption arising from the evidence. That is the proper province of the jury." Again: "If, therefore, there is parol evidence in the case which is loose and indeterminate, and may be applied with more or less effect to the jury, or of the evidence of circumstances, which is meant to operate beyond the proof of the existence of those circumstances, and to conduce to the proof of other facts, the party demurring must admit the facts of which the evidence is so loose and indeterminate and circumstantial, before the court will compel the other party to join therein." And in the case of Reed v. Evans, 17 Ohio, 128, the same rule is declared. See, also, U. S. Bank v. Smith, 11 Wheat. [24 U. S.] 172; Suydam v. Williamson, 20 How. [61 U. S.] 427. Applying the doctrine thus laid down to the evidence in this case, the demurrer must be overruled.

The defendant then proceeded to introduce testimony, and at the conclusion of the arguments of counsel THE COURT instructed the jury as follows:

It is claimed by the plaintiff that he was acting as brakeman, under the orders of his superiors, the conductor and engineer, when the accident from which the injury resulted occurred. It is also claimed that the accident resulted from the incompetency of servants in the employ of the defendant. The general doctrine "that a principal is not liable to one servant in his employ for injuries resulting from the carelessness of another servant, when both are engaged in a common service," may be said to be an admitted rule of law. The Ohio courts have engrafted upon this general rule the qualification that, if the servant was acting under the orders of a servant of superior grade, the principal is liable for injuries resulting from the negligence of such superior (Cleveland, C. & C. R. Co. v. Keary, 3 Ohio St. 201), and such is believed to be the doctrine of the courts of Kentucky. But, so far as we have been able to examine the doctrine of the courts of the other states of the Union, they admit of no such exception. The question has not been passed upon by the supreme court of the United States, although it was suggested in the case of Union Packet Co. v. McCue, 17 Wall. [84 U. S.] 508, and Union Pac. R. R. v. Fort, Id. 508. The circuit courts of the United States, so far as we are advised, have followed the general rule. Haugh v. Texas & Pac. Ry. Co. [Case No. 6,221]; Dillon v. Union P. R. Co. [Id. 3,916]. The question not involving the construction of any statute of the state, but being one of general jurisprudence, we are not bound to follow the state decisions upon the question. Pine Grove Tp. v. Talcott, 19 Wall. [86 U. S.] 677.

We entertain a very high regard for the decisions of the supreme court of Ohio, and would be satisfied if the rule of law were in accordance with their decisions; but the weight of authority against it requires us, we think, to adopt the general rule that the defendant is not liable to the plaintiff in this cause if the injury complained of was caused by the negligence of either the conductor, engineer, or brakeman; they were all his fellow servants. Whart. Neg. 222; Redf. R. R., 229; and the very careful and extended collection of the authorities by Judge Dillon in the case of Dillon v. Union Pac. Railroad [supra].

Under the second branch of the plaintiff's claim there can be no doubt the defendant was bound to use ordinary and reasonable care and diligence in the selection of their employés, and to furnish suitable structure and machinery. And if the evidence shows you, in this case, that the defendant negligently employed an unskilled and incompetent conductor, engineer, or brakeman, and the injury accrued to the plaintiff by reason of the negligence of conductor, engineer, or brakeman, the plaintiff is entitled to your verdict, unless the plaintiff was fully advised of such incompetency, and remained in the service of the defendant after being so advised. See authorities supra.

If you should find for the plaintiff, you will give him such sum as will compensate him for the injury sustained. And this will embrace the loss of property destroyed, expenses incurred, loss of time, pain and suffering and permanent injuries resulting to him from the accident; but you cannot give exemplary damages, unless you find that the injury was done willfully, or was the result of a reckless indifference to the rights of the plaintiff, or that entire want of care which would raise the presumption of a conscious indifference to consequences. Milwaukee, etc., R. Co. v. Arms, 91 U. S. 489.

Verdict for plaintiff for $300.